**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.

KATHLYNN DOMINGUEZ, M.D., M.P.H.

*Plaintiff*,

v.

LIFE INSURANCE COMPANY OF NORTH AMERICA,

*Defendants*.

---

## COMPLAINT AND JURY DEMAND

---

The Plaintiff, Kathlynn Dominguez, M.D., M.P.H. by and through her counsel of record, McDermott Law, LLC, for his Complaint against Defendant, Life Insurance Company of North America states, alleges, and avers as follows:

### I. JURISDICTION, VENUE, PARTIES

1. Plaintiff, Kathlynn Dominguez, M.D., M.P.H. (hereinafter referred to as "Plaintiff" or "Dr. Dominguez"), at all times pertinent hereto, was and is a resident of the State of Colorado.

2. Dr. Dominguez began working for Denver Health and Hospital Authority ("Denver Health") on June 23, 2011 as an Emergency Medicine Resident.

3. As an employee of Denver Health, Dr. Dominguez was a participant in the Denver Health and Hospital Authority benefit plan ("Plan").

4. The Plan provides, among other benefits, long-term disability ("LTD") and life insurance benefits to participants, including Dr. Dominguez.

5.     The Plan is considered a "governmental plan" as that term is defined in 29 U.S.C. § 1002(32).

6.     The Plan is exempt from the Employee Retirement Income Security Act ("ERISA") under 29 U.S.C. § 1003(b)(1).

7.     As part of the Plan, Life Insurance Company of North America ("LINA") issued a Group Long Term Disability Policy Number FLK-960672 ("LTD Policy") and a Group Life Insurance Policy Number FLX-964948 ("Life Policy") for the benefit of Denver Health employees, including Plaintiff.

8.     The LTD Policy was issued by LINA to Denver Health & Hospital Authority in the State of Colorado.

9.     The LTD Policy became effective on January 1, 2013.

10.    The Life Policy was issued by LINA to the Trustee of the Group Insurance Trust for Employers in the Services Industry in the State of Delaware and was subscribed to by Denver Health & Hospital Authority.

11.    The Life Policy became effective on January 1, 2013.

12.    As an eligible Plan participant, Dr. Dominguez became insured under the Policies in the State of Colorado.

13.    The Policies were paid for in the State of Colorado.

14.    LINA is a Pennsylvania corporation, with its principal place of business in Philadelphia, Pennsylvania.

15.    LINA is an insurance company registered with the Colorado Division of Insurance and conducts the business of insurance in the State of Colorado.

16.    LINA is a subsidiary company of Cigna Corporation.

17.    LINA is the insurer and underwriter of the LTD and Life Policies.

18. Upon information and belief, LINA is the designated claim administrator for the Plan.

19. Upon information and belief, LINA makes all determinations regarding claimants' eligibility for LTD benefits and Extended Death Benefits with Waiver of Premium ("WOP") under the Policies.

20. If a Plan participant, such as Dr. Dominguez, is entitled to LTD benefits under the LTD Policy, LINA must pay from its own funds all benefits owed to the Plan participant.

21. If a Plan participant, such as Dr. Dominguez, is entitled to Extended Death Benefits with WOP under the Life Policy, LINA must provide life insurance coverage with WOP to a Plan participant.

22. LINA, as the insurer, owes Plan participants, such as Dr. Dominguez, the duties of good faith and fair dealing when handling their claims for benefits under the Policies.

23. LINA, as a disability insurer, owes Plan participants, such as Dr. Dominguez, a fiduciary duty when handling their claims for benefits under the Policies.

24. LINA's breach of the Policies and duties owed to Dr. Dominguez occurred in the State of Colorado.

25. The tortious conduct alleged in this action occurred in Colorado.

26. The injuries Dr. Dominguez suffered as a result of LINA's breach and tortious conduct occurred in the State of Colorado.

27. The amount of controversy exceeds the sum or value of $75,000 and is between Plaintiff, who is a resident of the state of Colorado, and Defendant, who is incorporated under the laws of Pennsylvania and maintains a principal place of business there.

28. The Court has diversity jurisdiction under 28 U.S.C. § 1332 (a)(1).

29. The Court has subject matter jurisdiction over the action under 28 U.S.C. 1332 and 28 U.S.C. §§ 1332(e) & (f).

30. This Court has personal jurisdiction over Defendant Life Insurance Company of North America ("LINA").

31. As a substantial part of the events or omissions giving rise to the claim occurred in the state of Colorado, Venue is proper in the United States District Court for the District of Colorado under 28 U.S.C. § 1391(a) & (b) and 29 U.S.C. § 1132(e)(2).

## II. GENERAL ALLEGATIONS

### A. MEDICAL CONDITIONS AND TREATMENT

32. Dr. Dominguez has suffered from chronic neck pain for years after a motor vehicle accident.

33. Dr. Dominguez was diagnosed with a Grade I meningioma (brain tumor) on March 10, 2014.

34. The tumor could not be resected because it is entangled with a major blood vessel that supplies the left side of Dr. Dominguez' brain and is also entangled with numerous crucial cranial nerves, including the optic nerve (sight), that innervate the left side of her head/face.

35. Dr. Dominguez underwent a surgical debulking of the brain tumor on March 19, 2014.

36. Following the surgical procedure, Dr. Dominguez underwent daily radiation therapy five days per week for a total of six weeks from September 24, 2014 through November 4, 2014.

37. Despite this treatment, she continued to experience symptoms arising from her medical conditions.

38. Her medical diagnoses include chronic paroxysmal hemicrania (a Trigeminal Autonomic Cephalgia (TAC), a severe headache syndrome), chronic hemicrania continua (also a TAC, a severe headache syndrome), chronic pain syndrome, cervicalgia, atypical trigeminal neuralgia, migraines, and chronic daily headaches.

39. As a result of her medical conditions, Dr. Dominguez experiences the following symptoms: baseline chronic daily headaches, unpredictable and severe debilitating exacerbations of her headaches, and during exacerbations concurrent exacerbation of intense nausea, imbalance, dizziness, light and sound sensitivity, among other symptoms.

**B.    CLAIMS FOR BENEFITS**

40. As a result of her medical conditions, Dr. Dominguez was no longer able to perform the material duties of her regular occupation as an Emergency Medicine Resident.

41. Dr. Dominguez's last day of work was January 24, 2014.

42. Dr. Dominguez notified LINA of her claim for disability insurance benefits on January 31, 2014.

43. LINA assigned number 3222622 to Dr. Dominguez's claims for STD, LTD and WOP benefits under the Policies.

44. LINA approved Dr. Dominguez's short term disability ("STD") benefits on February 6, 2014.

45. Dr. Dominguez received STD benefits from February 3, 2014 through the maximum benefit period which ended on July 27, 2014.

46. LINA acknowledged receipt of Dr. Dominguez's LTD claim on July 17, 2014.

47. In order to be entitled to benefits under the LTD Policy, Dr. Dominguez had to prove she was disabled according to the following definition of disability:

> The Employee is considered Disabled if, solely because of Injury or Sickness, he or she is:
>
> Unable to perform the material duties of his or her Regular Occupation; and unable to earn 80% or more of his or her Indexed Earnings from working in his or her Regular Occupation.
>
> After Disability Benefits have been payable for 24 months, the Employee is considered Disabled if solely due to Injury or Sickness, he or she is:

5

> Unable to perform the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training or experience; and unable to earn 80% or more of his or her Indexed Earnings.

48. LINA approved Dr. Dominguez's claim for LTD benefits by letter dated July 24, 2014.

49. LINA acknowledged receipt of the WOP claim on August 1, 2014.

50. In order to be entitled to WOP benefits, Dr. Dominguez was required to prove that she was disabled according to the following definition of disability:

> "Disability"/"Disabled" means because of Injury or Sickness the Employee is unable to perform the material duties of his or her Regular Occupation; or is receiving disability benefits under the Employer's plan, during the initial 12 months of Disability. Thereafter, the Employee must be unable to perform all of the material duties of any occupation which he or she may reasonably become qualified based on education, training or experience, or is subject to the terms of a Rehabilitation Plan approved by the Insurance Company.

51. By letter dated January 6, 2015, LINA approved Dr. Dominguez's claim for WOP benefits under the Basic Life Insurance Policy.

52. LINA approved Dr. Dominguez's WOP claim again on April 6, 2015.

53. On December 15, 2015, LINA's Nurse Case Manager ("NCM") reviewed a medical record, dated October 8, 2015, and a Physical Abilities Assessment, dated September 10, 2015.

54. On December 15, 2015, LINA's Associate Medical Director ("AMD"), reviewed the NCM's report of the same date and concluded there was no documented measured loss of ability or impairments.

55. LINA directed the Vocational Rehabilitation Counselor to "perform TSA [Transferrable Skills Analysis] based upon [restrictions and limitations] outlined from AMD review dated 12/15/15."

56. Based upon the NCM and AMD medical reviews and the TSA, LINA terminated Dr. Dominguez's WOP claim On December 17, 2015.

57. By letter dated March 3, 2016, LINA commenced an evaluation to determine eligibility for benefits beyond the "Regular Occupation" period, which ended on July 24, 2016.

58. On June 1, 2016, Dr. Dominguez submitted an appeal of LINA's decision to terminate her WOP benefits.

59. On June 17, 2016 LINA concluded that the available medical information was sufficient to support a functional loss and recommended the WOP claim be reopened.

60. A month later, LINA's NCM referred the file for a medical review by a AMD who concluded, "There are no documentations of physical impairment or physical limitations to support no work."

61. LINA directed the Vocational Rehabilitation Counselor ("VRC") to conduct the TSA utilizing the restrictions and limitations identified in the July 19, 2016 AMD report.

62. The VRC identified two occupations he believed Dr. Dominguez could perform: her regular occupation and Cardiac Monitor Technician.

63. On July 26, 2016, LINA requested written clarification of functional impairments from Dr. Dominguez's treatment provider, Christian Thurstone, M.D.

64. LINA's July 26, 2016 letter provided Dr. Thurstone one (1) business day to respond to the ten questions posed by LINA.

65. LINA proceeded to perform a NCM review on July 26, 2016 without waiting to receive Dr. Thurstone's responses.

66. An AMD review was performed two days later, which was based entirely upon two medical records, dated March 3, 2016 and May 13, 2016.

67. By letter dated August 10, 2016, LINA terminated Dr. Dominguez's LTD benefits at the change in definition of disability from "regular occupation" to "any occupation."

68. LINA paid Dr. Dominguez LTD benefits from July 24, 2014 through August 5, 2016.

69. By letter dated August 16, 2016, LINA upheld its decision to terminate the WOP claim.

70. By letter dated February 6, 2017, with the assistance of Darras Law, Dr. Dominguez submitted a first appeal of the termination of her LTD benefits and a second appeal of the termination of her WOP claim.

71. Supplemental evidence supporting Dr. Dominguez's claim for benefits was submitted to LINA on March 22, 2017.

72. Dr. Dominguez's appeal was supported by medical records, a Headache Residual Functional Capacity Questionnaire, the Social Security Administration's Notice of Award, Decision, and file, medical records and medical literature.

73. On June 29, 2017, LINA upheld its prior adverse benefit determinations.

74. In rendering its adverse benefit determinations, LINA ignored all documentation and information it had available to it from Plaintiff and her treating medical providers demonstrating that she is incapable of performing with reasonable continuity the material duties of any occupation.

75. LINA's decisions to terminate Dr. Dominguez's LTD and WOP benefits were based upon the opinions of medical reviewers who have never met, spoken to, or examined Dr. Dominguez.

76. LINA's decisions to terminate Dr. Dominguez's LTD and WOP benefits were based on TSA's which did not consider the restrictions and limitations identified by her treatment providers.

77. From January 25, 2014 through present, Plaintiff has been and remains disabled as defined in the Policy.

78. At all times pertinent hereto, Defendants were and continue to be liable for paying Dr. Dominguez's disability benefits under the Policy.

79. LINA's termination of Dr. Dominguez's disability benefits was contrary to the evidence of record and is unreasonable, incorrect, improper, and unsupported by the evidence.

80. LINAs' acts and omissions have compelled Dr. Dominguez to institute litigation to recover benefits owed to her under the Policy.

81. LINAs' acts and omissions are and were designed to discourage Dr. Dominguez from asserting her rights and claims with regard to disability benefits.

82. LINA's termination of Dr. Dominguez's benefits under the LTD Policy was not substantially justified, was arbitrary and capricious, was unsupported by substantial evidence, constituted abuse of any discretion allowed, and was wrongful under the circumstances.

83. LINA suffers from a structural conflict of interest as it (1) decides whether Plan participants, including Dr. Dominguez, will receive benefits under the LTD Policy, and (2) is also required to pay those benefits if it determines such benefits are owed.

84. LINA knew, or should have known, that their acts and omissions were unreasonable, or they recklessly disregarded the fact that they were unreasonable.

85. As a direct and proximate result of the Defendants' conduct, Dr. Dominguez has suffered damages including, without limitation, loss of contract benefits, inconvenience, frustration, emotional distress, embarrassment, and financial harm.

86. Defendants owe their insureds, such as Dr. Dominguez, the duties of good faith and fair dealing when handling their claims for benefits under the Policy.

87. Defendants owe their insureds, such as Dr. Dominguez, a fiduciary duty when handling their claims for benefits under the Policy.

C.  **SOCIAL SECURITY ADMINISTRATION'S DECISION**

88. On March 13, 2013, in the matter of Life Insurance Company of North America, Connecticut General Life Insurance Company, and Cigna Health and Life Insurance Company (formerly Know[n] as Alta Health and Life Insurance Company), LINA entered into a Regulatory Settlement Agreement ("RSA").

89. The Colorado Division of Insurance adopted the RSA as a Participating State on May 30, 2013.

90. Under the RSA, LINA agreed that when making disability determinations, it would, in certain circumstances, give significant weight in a claimant's favor to the award of SSDI benefits.

91. Under the RSA, LINA agreed that "[a]ffording significant weight to a SSDI award means that the SSA records related to the SSDI award are reviewed and consideration of the SSA's judgment that a claimant is disabled for SSDI purposed will generally be an essential element of the Disability evaluation under the governing Disability contract."

92. Dr. Dominguez's appeal falls within the "certain circumstances" for which LINA agreed to give significant weight in a claimant's favor to the award of SSDI benefits.

93. On September 7, 2016, the Social Security Administration's ("SSA") Administrative Law Judge ("ALJ"), Jennifer Millington, reached a fully favorable decision in determining Dr. Dominguez's eligibility for Social Security Disability ("SSA") benefits.

94. ALJ Millington concluded as follows:

> The claimant has the following severe impairments: brain tumor, status post resection with residual headaches, visual field deficits, and depression; The claimant is unable to perform any past relevant work; The claimants acquired job skills do not transfer to other occupations within the residual functional capacity; Considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in national economy that the claimant can perform.

95. Based on the ALJ's decision, the SSA issued a Notice of Award on October 21, 2016, approving Dr. Dominguez's Social Security Disability Insurance retroactively to July 2014.

96. The SSA's decision was reached less than a month (28 days) before LINA decided to terminate Dr. Dominguez's LTD benefits on August 10, 2016.

97. The SSA's decision was reached three (3) weeks (22 days) before LINA decided to uphold its decision to terminate WOP benefits on August 16, 2016.

98. LINA ignored the SSA decision because, "there was no reassessment by the Social Security Administration" and LINA's "information on file is more recent than what the SSA had to consider at the time of its decision."

### III. FIRST CLAIM FOR RELIEF
### (Breach of Contract)

99. Plaintiff realleges each and every allegation of above and below as if fully set forth herein.

100. The LTD and Life Policies issued by LINA constitute contracts of insurance.

101. Plaintiff is entitled to LTD benefits retroactive to August 5, 2016 (the date LINA terminated her LTD benefits) due and owing through the date of judgment and through the end of the maximum benefit period.

102. Plaintiff is entitled to life insurance coverage with waiver of premium retroactive to December 17, 2015 (the date LINA terminated her WOP claim) due and owing through the date of judgment and through the end of the maximum benefit period.

103. Through the acts and omissions described herein, as well as those yet to be uncovered through discovery, Defendant breached the contracts of insurance.

104. Defendant's breaches of the insurance contracts have caused Plaintiff to suffer injuries, damages, and losses in amounts to be proven at trial.

### IV. SECOND CLAIM FOR RELIEF
### (Bad Faith Breach of Insurance Contract)

105. Plaintiff realleges each and every allegation of above and below as if fully set forth herein.

106. Defendants owed duties to Plaintiff as fiduciaries.

107. Defendants owed duties to Plaintiff under the Policy's implied covenant of good faith and fair dealing, wherein Defendants covenanted that they would, in good faith and in the exercise of fair dealing, deal with Plaintiff fairly and honestly, and do nothing to impair, interfere with, hinder, or potentially injure Plaintiff's rights to receive the benefits of the insurance contract.

108. Defendants breached their fiduciary duties and duties of good faith and fair dealing by their actions, which included, without limitation, the following unreasonable acts:

   a. Disregarding the Plaintiff's rights or having a reckless disregard that its conduct was unreasonable;

   b. Failing to pay Plaintiff's claim for disability benefits under the Policy;

   c. Ignoring the opinions of Plaintiff's treating physicians regarding the nature of her disability;

   d. Refusing to pay claims without conducting a reasonable investigation based upon all available information;

   e. Placing their interests in not paying benefits ahead of Dr. Dominguez's interest in receiving benefits owed under the Policy;

   f. Failing to properly investigate Dr. Dominguez's claim for benefits;

   g. Terminating Dr. Dominguez's benefits without a reasonable basis for doing so;

   h. Selectively considering only those records and documents that supported their decision to terminate benefits;

   i. Failing to render timely decisions on the claim; and

   j. Other conduct to be revealed during discovery.

109. Defendants knew their acts and omissions were unreasonable, or they recklessly disregarded the reasonableness of their acts and omissions.

110. As a proximate result of Defendants' actions, Plaintiff has suffered damages and losses in an amount to be proved at trial, including, but not limited to:

   a. The contract benefits;

    b.  Being forced to incur additional attorneys' fees and costs in litigation;

    c.  Enduring the emotional trauma of being unnecessarily involved in a lawsuit with Defendant;

    d.  The adverse effect on her financial well-being from the termination of benefits; and

    e.  Other losses and damages alleged elsewhere herein.

  111. As a proximate result of the Defendants' actions and conduct, Plaintiff sustained economic losses, including without limitation the loss of the contract benefit.

  112. As a proximate result of the Defendants' actions and conduct, Plaintiff sustained compensable non-economic injuries, including without limitation, inconvenience, emotional stress, impairment of the quality of life, mental suffering, anguish, anxiety, annoyance, humiliation, and loss of the enjoyment of life, in amounts to be proved at trial.

## V. THIRD CLAIM FOR RELIEF
### (Violation of C.R.S. § 10-3-1115 and Relief under C.R.S. § 10-3-1116)

  113. Plaintiff realleges each and every allegation of above and below as if fully set forth herein.

  114. Plaintiff is a "first-party claimant" as that term is defined under C.R.S. § 10-3-1115.

  115. Through the acts and omissions alleged herein, and others likely to be uncovered during discovery, Defendants unreasonably terminated Dr. Dominguez's claim for disability benefits within the meaning of C.R.S. § 10-3-1115.

  116. Under C.R.S. § 10-3-1116(1), Dr. Dominguez may bring an action in a district court to recover reasonable attorneys' fees, court costs, and two times the covered benefit.

  117. Pursuant to C.R.S. §10-3-1116, Plaintiff is entitled to recover her attorney's fees, costs, and two times the contract benefit.

## VI.     FOURTH CLAIM FOR RELIEF
### (Violation of the Colorado Consumer Protection Act)

118.   Plaintiff re-alleges each and every allegation of above and below as if fully set forth herein.

119.   Defendants' bad faith conduct described above and below constitutes an unfair or deceptive trade practice prohibited by the Colorado Consumer Protection Act.

120.   The deceptive trade practices occurred in the course of Defendants' business.

121.   Defendants have engaged in a pattern and practice of adjusting claims for LTD and WOP benefits in a manner that is unreasonable, constitutes a violation of the duty of good faith and fair dealing and is in direct violation of the Unfair Claims Settlement Practices Act.  This pattern and practice includes:

   a.   terminating claims without any reasonable basis for doing so;

   b.   refusing to pay claims without conducting a reasonable investigation based upon all available information;

   c.   refusing to reasonably consider non-exertional limitations in the administration of disability claims;

   d.   failing to acknowledge and act reasonably promptly upon communications about claims;

   e.   misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

   f.   failing to promptly explain how its insurance policies and/or the law support its denials and/or terminations of claims; and

   g.   establishing informal quotas as to certain classes of appeal specialists on the number of internal appeals which can be granted in a particular month and/or quarterly basis;

   h.   forcing insureds to sue to recover benefits due under an insurance policy;

   i.   attempting to settle claims for less than the amount a reasonable person would believe is owed;

   j.   other conduct to be revealed during discovery.

122. In issuing the LTD Policy, LINA misrepresented the terms under which benefits would be payable to the Plaintiff.

123. In issuing the Life Policy, LINA misrepresented the terms under which life insurance benefits would be extended to Plaintiff with waiver of premium.

124. As a result, Plaintiff is entitled to recover statutory penalties in the amount of three times hers damages in this action and her reasonable attorneys' fees.

**WHEREFORE**, Plaintiff Kathlynn Dominguez, M.D., M.P.H. asks that judgment be entered in her favor and against the Defendant as follows:

1. Declare that Plaintiff is disabled within the meaning of the LTD Policy and is entitled to benefits under the Plan and the LTD Policy;

2. For compensatory economic, noneconomic, and special damages in amounts to be proven at trial;

3. For interest (statutory and moratory) as provided by law;

4. For two times the benefit amount, pursuant to C.R.S. §10-3-1116;

5. For treble damages, fees and costs as permitted under the Colorado Consumer Protection Act;

6. For attorneys' fees and other costs of suit, including expert witness fees; and

7. For such other and further relief as the Court deems just and proper.

## Plaintiff Demands a Trial by Jury

DATED this 13th day of July 2018.

                                              McDERMOTT LAW, LLC

                                              ***s/ Mary Susan Kern***
                                              _____
                                              Mary Susan Kern, #50730
                                              Shawn E. McDermott, #21965
                                              4600 S Ulster Street, Suite 800
                                              Denver, CO 80237
                                              (303) 964-1800
                                              (303) 964-1900 (fax)
                                              *marysue@mcdermottlaw.net*
                                              *shawn@mcdermottlaw.net*
                                              **Attorneys for Plaintiff**

Plaintiff's Address:
90 North Corona Street, Apt 901
Denver, CO 80218